UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-61976-BLOOM/Valle

IQRIS TECHNOLOGIES LLC,

    Plaintiff,

v.

POINT BLANK ENTERPRISES, INC, *et al.*,

    Defendants.
_____/

## ORDER ON CLAIM CONSTRUCTION

**THIS CAUSE** is before the Court upon the Parties' *Markman*[1] submissions, ECF Nos. [130], [131], [132], [137], [139]. This case was filed by Plaintiff IQRIS Technologies LLC, alleging that Defendants Point Blank Enterprises, Inc. and National Molding, Inc. have infringed on Plaintiff's patents, specifically U.S. Patent Nos. 7,814,567 ("the '567 Patent") and 8,256,020 ("the '020 Patent"). At issue before the Court is the construction of thirteen (13) disputed Claim terms in the Patents. Following a *Markman* hearing on November 16, 2022, the Court makes the following determinations.

    **I.**    **LEGAL STANDARD**

In constructing claims, "the court should look first to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification, and if in evidence, the prosecution history." *Kegel Co. v. AMF Bowling, Inc.*, 127 F.3d 1420, 1426 (Fed. Cir. 1997) (quotation marks omitted). In looking at the language of the patent itself, words "are generally given their ordinary and customary meaning" that a "person of ordinary skill in the art in question at the time of the

---

[1] *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 389 (1996).

invention" would find it to have. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc) (quotation marks omitted). "Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* at 1313. "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314. "In such circumstances, general purpose dictionaries may be helpful." *Id.* at 1314.

"In many cases that give rise to litigation, however, determining the ordinary and customary meaning of the claim requires examination of terms that have a particular meaning in a field of art." *Id.* "Because the meaning of a claim term as understood by persons of skill in the art is often not readily apparent, and because patentees frequently use terms idiosyncratically, the court looks to those sources available to the public that show what a person of the skill in the art would have understood disputed claim language to mean." *Id.* (internal quotation marks omitted). "Those sources include the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Id.* (quotation marks omitted). *See also Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 389 (1996) ("a term can be defined only in a way that comports with the instrument as a whole").

There is a "heavy presumption in favor of the ordinary meaning of claim language." *Johnson Worldwise Ass'n, Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999). "Claim terms cannot be narrowed by reference to the written description or prosecution history unless the language of the claims invites reference to those sources." *Id.* at 989-90. There are "two situations

where a sufficient reason exists to require the entry of a definition of a claim term other than its ordinary and accustomed meaning." *Id.* at 990. "The first arises if the patentee has chosen to be his or her own lexicographer by clearly setting forth an explicit definition for a claim term," and "[t]he second is where the term or terms chosen by the patentee so deprive the claim of clarity that there is no means by which the scope of the claim may be ascertained from the language used." *Id*. Moreover, the proper meaning of a term "can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim." *Phillips*, 415 F.3d at 1316.

## II.    DISCUSSION

The Patents at issue relate to "a protective garment having a front portion, a rear portion, and a quick release system having a plurality of connectors for releasably attaching the front portion to the rear portion, and a pull cord." ECF No. [132-1] at 12 ('567 Patent); ECF No. [132-2] at 12 ('020 Patent). The purpose of the quick release system is to allow the protective garment, referred to in both Patents' Claims as a ballistic garment, to be quickly and easily removed in emergency situations. *Id.*

The '020 Patent is a "continuation application" of the 567 Patent."[2] The two Patents contain the same background, specification, and illustrations, but the terms within the '567 Patent's Claims are more specific than those within the '020 Patent's Claims. For example, whereas Claim 1 of the'567 Patent specifies that the front and rear panels of the ballistic garment are connected via "a plurality of rings" attached to a "releasable hook," '567 Patent at col. 6 lines 28-51, Claim 1 of the '020 Patent states more generally that the two panels are connected via "a plurality of fastening

---

[2] A 'continuation' application is one that is filed during the pendency of an application previously filed by the same inventor, called the original or 'parent' application, and which discloses and claims only subject matter disclosed and claimed in the original or parent application." *Am. Household Prods., Inc. v. Evans Mfg., Inc.*, 139 F. Supp. 2d 1235, 1237 n.2 (N.D. Ala. 2001).

elements" attached to a "releasable fastener." '020 Patent at col. 6 lines 25-49. Both Patents describe a "pull cord" that actuates the quick release system by disengaging the "releasable hook" (in the case of the '567 Patent) or the "releasable fastener" (in the case of the '020 Patent). '567 Patent at col. 6 lines 45-47; '020 Patent at col. 6 lines 42-46.

The parties' briefings indicate that there are fifteen (15) terms in dispute. *See* ECF No. [137] at 2-5 (providing a helpful chart of the parties' competing definitions). However, at the hearing on November 16, 2022, Defendants agreed to accept Plaintiff's proposed definitions of "Front Portion" and "Anchor Element." Thus, thirteen (13) terms remain in dispute.

1. **"Pull Cord"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| A component which, when put into tension, can result in activating the releasable fastener. | A cord on the exterior of the ballistic garment grasped by a user that is capable of disengaging the releasable fastener or releasable hook when a user pulls on the pull cord. |

The term "pull cord" appears throughout both Patents. From the briefings and oral argument, it is apparent that "pull cord" is the critical term in dispute. In general, Defendants attack Plaintiff's definition as overly broad, arguing that "cord" is far more specific than Plaintiff's proposed "component." ECF No. [137] at 9. Plaintiff argues that Defendants' definition impermissibly defines "pull cord" in terms of itself. ECF No. [139] at 2-3 (citing *SIPCO, LLC v. Emerson Elec. Co.*, 939 F. 3d 1301, 1311 (Fed. Cir. 2019), vacated and remanded on other grounds, 140 S. Ct. 1367 (2020); *Versata Dev. Gr., Inc. v. SAP America, Inc*, 793 F.3d 1306, 1326 (Fed. Cir. 2015)).

Having reviewed the cases cited by Plaintiff, the Court concludes that there is nothing inherently improper with using a word within a contested term to help define that contested term.

Both *SIPCO* and *Versata* criticized a definition of "technological invention" that repeated the term "technological" and therefore failed to meaningfully differentiate a technological invention from a non-technological invention. *Versata*, 793 F.3d at 1326. Neither case supports the proposition that the Court cannot use a word within a term to help define that term, at least when the repeated word has a clear meaning.[3] *See, e.g.*, *Phillips*, 415 F.3d at 1324 (construing "steel baffles" to be "made of steel").

Regarding the term "pull cord," there is no suggestion that it is something other than a specific type of what is commonly understood to be a cord, *i.e.*, a long, slender, flexible material. *See also Johnson Worldwise*, 175 F.3d at 989 (There is a "heavy presumption in favor of the ordinary meaning of claim language."). The Patents' illustrations clearly depict what is commonly understood to be a cord, *see, e.g.* '567 Patent at Figs. 1A, 1B, 4, 5, and the Claims and specifications are all consistent with that understanding. Thus, a "pull cord" is, unsurprisingly, a specific type of cord.

There is no dispute as to the pull cord's function. The Patents' summary and specifications are replete with references to "pulling on the pull cord" to engage the ballistic garment's quick release system. *See, e.g.*, '567 Patent at col. 2 lines 59-61 ("pulling the pull cord on the protective garment to detach the front portion from the rear portion."); col. 4 lines 13-15 ("pulling on the pull cord can disengage at least two of the connectors, and can allow detachment of the front portion from the rear portion."[4]); col. 5 lines 36-38 ("To release the front portion from the rear portion of

---

[3] While Plaintiff attacks many of Defendants' definitions for repeating a word within a contested term, Plaintiff commits the same supposed sin. *See, e.g.*, ECF No. [131] at 10 (defining "**front** panel" as "a part of a protective vest to be placed on the **front** of the body of the wearer" (emphases added)). This example illustrates that, in some cases, a word within a contested term is unambiguous and helpful in defining the term.

[4] Here and throughout this Order, the Court omits numbers that the specification has assigned to terms in reference to the illustrations, for example "pull cord **16**" and "connectors **14**."

5

ballistic vest, pull cord may be pulled to disengage at least two connectors.)"; col. 5. lines 43-45 ("pulling the pull cord causes the release knob to open each corresponding releasable hook, thereby releasing the entrapped rings."); col. 7 lines 32-38 ("pulling a pull cord . . . to allow detachment of at least a part of the front panel of the ballistic garment from at least a part of the rear panel of the ballistic garment."). Indisputably, the pull cord is a cord that actuates the garment's quick release system when it is pulled.

The heart of this dispute is *how* the pull cord is pulled, and, relatedly, *where* the pull cord appears. Defendants' view, which is consistent with the Patents' illustrations, is that the "pull cord" must be on the exterior of the ballistic garment so that it can be directly pulled by the garment's wearer. ECF No. [130] at 12. Plaintiff counters that the Patents' illustrations are not intended to be limitations, and the pull cord could be wholly internal to the ballistic garment and put into tension by means other than a human pulling on it. ECF No. [139] at 7.

The fatal flaw with Plaintiff's construction is that it does not account for the Patents' clear differentiation of "pull cord" from other "cords." *See e.g.*, '567 Patent at col. 4 line 66 – col. 5 line 2. It is the pull cord's capability of being directly and manually pulled by a user that distinguishes the "pull cord" from a generic "cord," which, in one embodiment, connects the pull cord to release knobs. *Id*. While the generic "cords" are depicted as either internal or external to the ballistic garment, *see, e.g.*, '567 Patent at Fig. 1B, the "pull cord" is solely depicted on the exterior of the ballistic garment, where it can be readily pulled by a user. In sum, the distinguishing element of "pull cord" is that it can be directly pulled by a user who wishes to quickly remove the ballistic garment.[5]

---

[5] At the hearing, Plaintiff's counsel effectively conceded this point by agreeing that the pull cord must be "accessible" to a user.

The Patents' background provides further evidence that the "pull cord" must be capable of being directly pulled by the user. In describing the utility of the Patents at issue, the background explains that previous versions of releasable ballistic garments were released by the wearer pulling "a handle that is attached to the cables" in the interior of a ballistic garment. '567 Patent at col. 1 lines 60-66. The Patents disparage such systems as "time consuming and tedious." *Id.* at col. 2 lines 2-3; *see Phillips*, 415 F.3d at 1316 (noting that a Patent's specification "may reveal an intentional disclaimer, or disavowal, of claim scope by the inventor.") The Patents present the instant inventions as improvements over prior inventions due their "quick release system" that is actuated by a pull cord. '567 Patent at col. 2 lines 5-8. Given those statements in the background and the Patents' abundant references to the "pull cord" as the element that actuates the quick release system, the Court understands that the "inventors actually invented and intended to envelop" a system of quickly removing a ballistic garment by directly pulling on a pull cord. *Phillips*, 415 F.3d at 1316.

Admittedly, the Patents do not specify *who* pulls the pull cord. But the Patents' background section provides a clue. A primary benefit of the quick release system is that the ballistic garment can be quickly released "in emergency situations," including when a "soldier or law enforcement officer is wearing a protective vest and is injured or incapacitated[.]" '567 Patent at col. 1. lines 24-26. When the wearer of the garment is incapacitated, it may be necessary for another individual to pull the pull cord to quickly release the vest. But the Court is left with no doubt that *someone* must be able to directly pull the pull cord.

The remaining issue is whether Defendants are correct that the pull cord must be located on the "exterior" of the ballistic garment. *See* ECF No. [130] at 12. The Court agrees with Plaintiff that the Patents contain no such requirement. Defendants' citations to the Patents' description of

the pull cord being "**on** the protective garment" are unconvincing because that language appears in paragraphs describing individual embodiments of the inventions. '567 Patent at col. 2. lines 47-49, 59-61 (emphasis added). Defendants may be correct that the outside of the garment would be the most accessible and logical place for the pull cord, but it is conceivable, for example, that the pull cord could run down the body-facing side of the garment and be accessible to the user under the garment. Thus, the Court will not define pull cord in terms of its location.

For the foregoing reasons, the Court adopts the following definition of "pull cord": "A cord that can be directly pulled by a user to disengage a releasable fastener or releasable hook."

2. **"Ring"**

| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
|---|---|
| (None provided) | A ring or loop that enables the releasable hook to directly clasp the ring. |

The term "ring" appears only in the '567 Patent's Claims, which describe a "plurality of **rings**" that is "releasably clasped by the at least one releasable hook[.]" '567 Patent at col. 9 lines 28-29 (emphasis added). In briefings, Plaintiff did not set forth a proposed definition for "ring." *See, e.g.*, ECF No. [139] at 2 (arguing against Defendant's definition of "ring" but neglecting to propose an alternative definition). At the *Markman* hearing, Plaintiff's counsel argued against Defendant's definition as overly restrictive.

The Patents' specifications state: "Although ring is depicted as a D-ring, rings having other shapes can also be used, such as, O-ring, oval-ring, or loops." '567 Patent at col. 4 lines 54-56. Thus, the Patents have explicitly defined "ring" to be broader than the typical meaning of the term as a strictly O-shaped object. Finding the Patents' definition to be clear, the Court defers to it. *See Johnson Worldwise*, 175 F.3d at 990 (noting that a patentee's explicit definition of a term should be heeded when possible); *Phillips*, 415 F.3d at 1316 ("the inventor's lexicography governs.").

8

The Court adopts the following definition of "ring": "A ring, loop, or other enclosure to which the releasable hook fastens."

3. **"Releasable Hook"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| A component that acts as a releasable fastener. | A hook that directly clasps and encloses a ring when the ring is inserted into the releasable hook. |

The term "releasable hook" appears only in the '567 Patent's Claims. *See, e.g.*, '567 Patent col. 7 lines 32-35 ("the pull cord actuates the at least one **releasable hook** to disengage the at least one **releasable hook**" (emphasis added)). On the one hand, the '567 Patent's illustrations show a component that is consistent with the common definition of "hook," meaning a curved or bent device for catching, holding, or pulling. *See, e.g.*, Figs. 1A, 1B, 2-5

However, the specification explicitly defines "releasable hook" in broader terms: "[A]lthough releasable hook may be depicted as a snap shackle, other designs including clasps, or fasteners can readily be used and not deviate from the teachings of the present invention." '567 Patent at col. 4 lines 56-59. In deference to the Patents' broader definition, *see Johnson Worldwise*, 175 F.3d at 990, the Court adopts the following definition of "releasable hook": "a snap shackle, clasp, fastener, or similar component that releasably clasps to a ring."

4. **"Releasably Clasped"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| When the releasable fastener is engaged with the fastener such that the engagement can be released when activated. | Temporarily held in place when the ring is inserted into the releasable hook and the releasable hook is clasped around the ring. |

The term "releasably clasped" appears in claims 1 and 9 of the '567 Patent, which states that "the plurality of rings is **releasably clasped** by the at least one releasable hook." '567 Patent

at col 6. lines 41-42 (emphasis added). The Court sees no meaningful difference between the parties' definitions of this term, both of which accurately capture the meaning of two components being temporarily fastened together. However, both definitions add superfluous language that the Court will omit. The Court adopts the following definition of "releasably clasped": "temporarily fastened."

### 5. "Front Panel"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| A part of a protective vest to be placed on the front of the body of the wearer. | A panel on the front of the vest that is less than an entirety of the front portion of the ballistic garment. |

The term "front panel" appears within Claims 1 and 9 of both Patents. Defendants claim that "front panel" must be "less than the entirety of the front portion of the ballistic garment," ECF No. [137] at 13, whereas Plaintiff asserts that "front panel" is synonymous with "front portion." ECF No. [131] at 10.

Claim 1 of the '567 Patent describes the ballistic garment as comprising "a front panel," "a rear panel" and additional components that constitute the quick release system. '567 Patent at col. 6 lines 28-40. One such component is a "releasable hook" that "is fastened to the front panel[.]" *Id.* at lines 38-40. The term "front portion" does not appear until Claim Three, which states in full: "The ballistic garment of Claim 1, wherein the at least one releasable hooks [sic] is located on the **front portion** of the protective garment." *Id.* at lines 55-57 (emphasis added). The Patents' specifications depict "front portion" as being the entirety of the front of the ballistic garment. *See, e.g.*, '567 Patent at col. 3 lines 10-12. They do not depict or describe "front panel" at all.

If "front panel" is construed to be synonymous with "front portion," Defendants argue that Claim 3 becomes superfluous. Defendants correctly note that "the doctrine of claim

differentiation" disfavors such an interpretation. *Seachange Int'l, Inc. v. C-Cor, Inc.*, 413 F.3d 1361, 1368 (Fed. Cir. 2005). Defendants therefore argue that "front panel" must be something less than the "front portion." ECF No. [137] at 14. The problem with Defendants' argument, however, is that its construction does not remove the superfluousness of Claim 3. If "front panel" is a subset of "front portion," then Claim 1 – which describes the fastener as attached to the "front panel" – would merely become a subset of Claim 3 – which allows the hook to be anywhere on the "front portion."

The Court agrees with Plaintiff that "front panel" is synonymous with "front portion," which the parties agree means "[a] part of a protective vest to be placed on the front of the body of the wearer." ECF No. [137] at 6.[6] However, this definition is slightly inaccurate because both Patents consistently describe the invention as a "ballistic garment," with a "vest" being only one type of "ballistic garment." *See* '567 Patent at col. 6 lines 66-67; '020 Patent at col. 7 lines 1-2. Accordingly, the Court adopts the following definition of "front panel": "A part of a ballistic garment to be placed on the front of the body of the wearer."

6. **"Rear Panel"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| A part of a protective vest to be placed on the rear of the body of the wearer. | A panel on the rear of the vest that is less than an entirety of the rear portion of the ballistic garment. |

For the reasons discussed above with respect to "front panel," the Court adopts the following definition of "rear panel": "A part of a ballistic garment to be placed on the rear of the body of the wearer."

---

[6] As noted above, Defendants acceded to the Plaintiff's definition of "front portion" at the *Markman* hearing.

### 7. "Cover"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| A component or part of another component which at least partially is over at least one fastener. | A component made of ballistic protective material designed to protect the connectors. |

Claims 1 and 9 of the '567 Patent include "a cover" that "at least partially covers the plurality of rings and the at least one releasable hook." '567 Patent at col. 6 lines 43-44. While the word "cover' does not appear in the specification of the '567 Patent, the specification does mention the related word "covering": "In an embodiment of the present invention, a **covering**, made of ballistic protective material, such as Kevlar, can be provided to protect the connectors from secondary fragmentation that may occur if a bullet were to strike a releasable hook or ring." '567 Patent at col. 5 lines 56-60 (emphasis added). Plaintiff argues that this description of the covering's material is merely referring to *one* embodiment of the invention, so it would be inappropriate to define cover within Claims 1 and 9 according to that embodiment. ECF No. [139] at 7-8.

The Court agrees with Plaintiff that the Cover need not necessarily be made of ballistic protective material. However, the Court does not find that Plaintiff's proposed definition adds any clarity to the term, which is clearly described within Claim 1 as a component that "at least partially covers the plurality of rings and the [sic] at least one releasable hook." '567 Patent at col. 6 lines 43-44. Accordingly, the Court adopts the following definition of "Cover": "A component that at least partially is over the plurality of rings and at least one releasable hook."

### 8. "Operationally Coupled"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| When the releasable fastener is engaged with the fastener such that the engagement can be released when activated. | Indirect attachment between the pull cord and the releasable fastener. |

Claim 1 of the '020 Patent describes "at least one pull cord [that] is **operationally coupled** to each of the plurality of releasable fasteners, wherein the [sic] at least one pull cord operationally actuates at least one releasable fastener[.]" '567 Patent at col. 6 lines 41-44 (emphasis added). The term "operationally coupled" does not appear within the Patent's specification.

The Court finds that the parties' definitions are substantively similar, but they both add elements that do not appear within the Claims' language. Unlike Plaintiff's definition, the term "operationally coupled" does not refer to the relationship between the "releasable fastener" and the "fastener," but rather between the "pull cord" and the "releasable fastener." '567 Patent at col. 6 lines 41-44. Defendant's definition adds the requirement that the interaction between the "pull cord" and the "releasable fastener" be "indirect." ECF No. [137] at 14. The Court sees no such requirement in the Claim's language, and the Court agrees with Plaintiff that the existence of additional cords – which would render the connection between "pull cord" and "releasable fastener" indirect – is only one permissible embodiment of the Patent. *See* '567 Patent at col. 4 line 60 – col. 5 line 2.

The Court adopts the following definition of "operationally coupled": "Directly or indirectly engaged."

9. **"Operationally Fastened"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| When the releasable fastener is engaged with the fastener such that the engagement can be released when activated. | Attached securely. |

As recited in Claim 1 of the '020 Patent, "each of the plurality of fastening elements is **operationally fastened** to a first end of a respective anchor element" and "each of the plurality of

releasable fasteners is **operationally fastened** to the front panel of the ballistic garment." '020 Patent at col. 6 lines 28-37 (emphases added).

The Court finds that Defendants' definition accurately defines the term, while Plaintiff's definition adds unnecessary and inaccurate material. The Court adopts Defendants' definition of "operationally fastened": "attached securely."

### 10. "Operationally Actuates"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Activation of the releasable fastener such that it releases from the fastener. | Movement of the releasable fastener in response to the indirect force caused by a user pulling on the pull cord. |

As recited in Claim 1 of the '020 Patent, "at least one pull cord **operationally actuates** at least one releasable fastener of the plurality of releasable fasteners to disengage the [sic] at least one releasable fastener[.]" '020 Patent at col. 6 lines 42-45 (emphasis added). The Court finds the parties' definitions to be substantively identical, but they both add extraneous and unhelpful material. In this context, "operationally actuates" simply means "activates." The Court adopts the following definition of "operationally actuates": "activates."

### 11.   "Releasable Fastener"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| A component that releasably engages and releasably reengages the fastener and when activated, disengages from the fastener. | A component capable of temporarily securing together two components when the other component is inserted into the releasable fastener and the releasable fastener is clasped around the other component. |

The term "releasable fastener" appears in Claims 1, 2, 3, and 9 of the '020 Patent. The Court finds both parties' definitions of the term to be imprecise. Plaintiff describes the "releasable fastener" as engaging and reengaging with "the fastener," ECF No. [139] at 5, but the Claims

describe the "releasable fastener" as engaging not with a "fastener" but rather a "fastening element." '020 Patent at col. 6 lines 43-44. Defendants' definition departs from the Claims' language by adding a requirement that the "other component" be "inserted into the releasable fastener and the releasable fastener is clasped around the other component." ECF No. [137] at 19. Defendants' definition essentially describes the hook-and-ring model discussed in Patent '567, but Claim 2 of the '020 Patent clarifies that "releasable fastener" also includes "clasps fasteners, clamps fasteners, snap fasteners, and buckles fasteners." '020 Patent at col. 6 lines 50-55. Thus, the Court rejects Defendants' proposed requirement that the releasable fastener be "clasped around the other component."

The Court adopts the following definition of "releasable fastener": "A component that releasably engages the fastening element and when activated, disengages from the fastening element."

### 12. "Fastening Element"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| A component that engages with a releasable fastener. | A ring or loop that enables the releasable fastener to clasp around the fastening element. |

The term "fastening element" appears within Claims 1, 2, and 9 of the '020 Patent. Again, Defendants are attempting to limit the term "fastening element," which appears within the '020 Patent, '020 Patent at col. 6 lines 50-51, to the definition of "ring" within the '567 Patent. But "fastening element" is broader than "ring," no doubt intentionally. The Court adopts Plaintiff's proposed definition of "fastening element": "A component that engages with a releasable fastener."

13. **"Hooks Fastener"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| A component that acts as a releasable fastener. | A hook capable of temporarily securing together two components when the other component is inserted into the hooks fastener. |

The term "hooks fastener" appears in Claim 2 of the '020 Patent, which specifies that the following constitute "releasable fasteners": "hooks fasteners, clasps fasteners, clamps fasteners, snap fasteners, and buckles fasteners." '020 Patent at col. 6 lines 50-55. The Court agrees with Defendants that Plaintiff's construction fails to distinguish "hooks fastener[ ]" from the other types of "releasable fasteners" listed in Claim 2. The Court adopts Defendants' proposed construction of "hooks fastener": "A hook capable of temporarily securing together two components when the other component is inserted into the hooks fastener."

### III. Conclusion

For the foregoing reasons, the Court construes the disputed Claim terms of the Patents as set forth above.

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 22, 2022.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record