### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-61976-BLOOM/Reinhart

IQRIS TECHNOLOGIES LLC,

     Plaintiff,

v.

POINT BLANK ENTERPRISES, INC, *et al.*,

     Defendants.

_____/

### ORDER ON MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon the Motion for Summary Judgment of Non-Infringement, ECF No. [184] ("Motion"), filed by Defendants Point Blank Enterprises, Inc. ("Point Blank") and National Molding, LLC's ("National Molding"), on February 1, 2023. Plaintiff IQRIS Technologies LLC filed a Response, ECF No. [190], to which Defendants filed a Reply, ECF No. [197]. The Court has carefully reviewed the Motion, all opposing and supporting submissions,[1] the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, Defendants' Motion is granted.

### I.    BACKGROUND

On September 20, 2021, Plaintiff filed this action, alleging that Defendants infringed U.S. Patent No. 8,256,020 ("the '020 Patent"). ECF No. 1 (Complaint). On August 12, 2022, Plaintiff filed the operative Amended Complaint, which adds allegations of infringement of U.S. Patent No.

---

[1] Defendants supported their Motion with a Statement of Material Facts ("SMF"), ECF No. [180], along with supporting Exhibits. *See* ECF Nos. [181], [182], [183], [185]. Plaintiff filed a Counter Statement of Material Facts, ECF No. [193] ("CSMF"), along with supporting Exhibits. *See* ECF Nos. [191], [192], [194], [195]. Defendants filed a Reply Statement of Material Facts, ECF No. [198] ("RSMF"), along with two additional Declarations. *See* ECF Nos. [199], [200].

7,814,567 ("the '567 Patent"). ECF No. [101]. Both Patents relate to "a protective garment having a front portion, a rear portion, and a quick release system having a plurality of connectors for releasably attaching the front portion to the rear portion, and a pull cord." ECF No. [181-1] at 12 ('567 Patent); ECF No. [181- 2] at 12 ('020 Patent).

The Amended Complaint asserts ten counts of infringement: (I) Direct Infringement by Point Blank of the '567 Patent, (II) Direct Infringement by Point Blank of the '020 Patent, (III) Indirect Contributory Infringement by Point Blank of the '567 Patent, (IV) Indirect Contributory Infringement by Point Blank of the '020 Patent, (V) Active Inducement of Infringement by Point Blank of the '567 Patent, (VI) Active Inducement of Infringement by Point Blank of the '020 Patent, (VII) Indirect Contributory Infringement by National Molding of the '567 Patent, (VIII) Indirect Contributory Infringement by National Molding of the '020 Patent, (IX) Active Inducement of Infringement by National Molding of the '567 Patent, and (X) Active Inducement of Infringement by National Molding of the '567 Patent. *See generally* ECF No. [101].

In their Motion for Summary Judgment, Defendants argue that (A) their products do not literally infringe Plaintiff's Patents because Defendants lack a "pull cord," (B) Defendants' products do not infringe under the doctrine of equivalents, and (C) a finding of non-infringement is consistent with the circumstantial evidence.[2] *See generally* ECF No. [184]. In its Response, Plaintiff argues that genuine issues of material fact preclude summary judgment on the issue of whether Defendants' products contain a "pull cord" or its equivalent. ECF No. [190].

## II.    MATERIAL FACTS

Based on the parties' respective statements of material facts, along with the evidence in the record, the following facts are not genuinely in dispute unless otherwise noted.

---

[2] Because the Court agrees with Defendants' first two arguments, the Court need not analyze Defendants' additional circumstantial evidence.

## A. Background

Plaintiff owns Patent '567 and Patent '020 (collectively, the "Asserted Patents"), both of which are entitled "Protective Garment Having A Quick Release System." SMF ¶¶ 1-2; CSMF ¶ 56; ECF No. [197] at 3 (not disputing Plaintiff's statements of ownership "for the purposes of this motion"). The Asserted Patents protect a ballistic garment with a quick release system, which is activated by a "pull cord" that disengages connectors such that the front portion and the rear portion of the ballistic garment detach. SMF ¶ 4; CSMF ¶ 4. The "pull cord" limitation is included in every independent claim of the Asserted Patents. SMF ¶ 5; CSMF ¶ 5.

Defendant Point Blank sells protective vests, some of which include release systems. SMF ¶ 6; CSMF ¶ 6. Defendant National Molding manufactures precision-engineered plastic components, including quick-release systems for use in protective vests. SMF ¶ 7; CSMF ¶ 7. National Molding has sold its "Quad Release" system to Point Blank and Point Blank has incorporated that system into its Special Response Vest. SMF ¶¶ 8, 10; CSMF ¶¶ 8, 10. National Molding has also sold to Point Blank a release system called "Evil Twin." SMF ¶ 9; CSMF ¶ 9.

Plaintiff contends that Point Blank's protective vests that incorporate National Molding's Quad Release or Evil Twin system infringe claims 1-3, 6, 9, and 11 of the '567 Patent and claims 1-3, 6, 8-9, and 11 of the '020 Patent. SMF ¶ 13; CSMF ¶ 13.

## B. Plaintiff's Patents

Patents '567 and '020 relate to "a protective garment having a front portion, a rear portion, and a quick release system having a plurality of connectors for releasably attaching the front portion to the rear portion, and a pull cord." ECF No. [181-1] at 12 ('567 Patent); ECF No. [181-

2] at 12 ('020 Patent). The '020 Patent is a "continuation application" of the 567 Patent."[3] The two Patents contain the same background, specification, and illustrations, but the terms within the '567 Patent's Claims are more specific than those within the '020 Patent's Claims. For example, Claim 1 of the '567 Patent specifies that the front and rear panels of the ballistic garment are connected via "a plurality of rings" attached to a "releasable hook," '567 Patent at col. 6 lines 28-51; yet Claim 1 of the '020 Patent states more generally that the two panels are connected via "a plurality of fastening elements" attached to a "releasable fastener." '020 Patent at col. 6 lines 25-49. Both Patents describe a "pull cord" that actuates the quick release system by disengaging the "releasable hook" (in the case of the '567 Patent) or the "releasable fastener" (in the case of the '020 Patent). '567 Patent at col. 6 lines 45-47; '020 Patent at col. 6 lines 42-46.

The following illustration, copied from Figure 1A of the Patents, ECF No. [181-1] at 3, depicts the relevant components of the patented ballistic garment:

---

[3] "A 'continuation' application is one that is filed during the pendency of an application previously filed by the same inventor, called the original or 'parent' application, and which discloses and claims only subject matter disclosed and claimed in the original or parent application." *Am. Household Prods., Inc. v. Evans Mfg., Inc*., 139 F. Supp. 2d 1235, 1237 n.2 (N.D. Ala. 2001).



The figure depicts the front portion of a ballistic garment containing a quick release system operated by a pull cord. The illustrated embodiment depicts four connectors (14), which, in this embodiment, consist of D-rings (26) connected to releasable hooks (13). '020 Patent at col. 4 lines 42-45. The four connectors (14) are attached to a total of two cords (18), which are in turn connected to pull cords (16). *Id*. at col. 4 lines 60-66. "[P]ulling on the pull cord (16) . . . causes the releasable hooks (13) to open, thereby . . . disengaging the connectors" and causing the front and rear portions of the vest to "simply fall away from a wearer." *Id*. at col. 4 line 64 – col. 5 line

2. The following illustration, taken from Figure 4 of the Patents, ECF No. [181-1] at 8, depicts the quick release system in operation:



An individual has pulled on the pull cord (16) appearing on the left side of the figure. As a result, the left cord (18) has been tightened, causing the two releasable hooks (13) to disengage. The right pull cord (16) has not been pulled, so the right releasable hooks (13) remain engaged.

The Patents provide several alternative embodiments. One such alternative embodiment, Figure 1B, ECF No. [181-1] at 4, contains an additional cord (18a) which connects the two cords (18), such that pulling on a single pull cord (16) will release all four releasable hooks (13) at once:



Accordingly, while there are different embodiments of the Patents, consisting of a differing number of cords (18), the Patents always contain a pull cord (16), which, when pulled, tightens at least one additional cord to create tension and release a releasable hook or releasable fastener (13). Accordingly, in the Court's Order on Claim Construction, the Court defined the "pull cord" as: "A cord that can be directly pulled by a user to disengage a releasable fastener or releasable hook." ECF No. [163] at 8.

### C.  The Accused Products

Plaintiff asserts that Defendants' "Quad Release" and "Evil Twin" systems infringe upon Plaintiff's Patents. The following is an illustration[4] of the Quad Release system within a protective garment:

---

[4] Copied from ECF No. [183] at 7.



As shown above, the Quad Release includes a trigger (a type of lever), which sits atop a trigger manifold (a base for the trigger). SMF ¶ 29; CSMF ¶ 29. The trigger is connected to four "Bowden" cables. SMF ¶¶ 30-31; CSMF ¶¶ 30-31. A "Bowden" cable consists of a wire inside a sheath; it transmits mechanical force by the movement of an inner cable relative to a hollow outer housing, which does not move. SMF ¶ 31; CSMF ¶ 31. When the Quad Release is incorporated into the protective vest, the Bowden cables are located entirely inside the protective vest and are covered by fabric or armor. SMF ¶ 35; CSMF ¶ 35.

The following images depicts the Quad Release system removed from the vest (left),[5] and a close-up of the Quad Release trigger system (right)[6]:

---

[5] Copied from ECF No. [183] at 7.

[6] Copied from ECF No. [183-2] at 2.



By lifting or "activating" the trigger, the wire within the Bowden cables becomes taut, causing the buckles at the opposite end of the Bowden cables to disengage. SMF ¶ 38; CSMF ¶¶ 38, 62, 64, 65. Activating the trigger to release the buckles requires less force than if a handle is attached to the ends of the wires to release the buckles. SMF ¶ 38; CSMF ¶ 38 (stating "Disputed," but failing to explain what is in dispute); Rittenhouse Decl. ¶ 16, ECF No. [183] (explaining how the Quad Release trigger functions); *See* ECF No. [192] ¶ 30 (Plaintiff's expert recognizing that the Quad Release trigger "may alter the level of force on the wire").

The Evil Twin functions similarly to the Quad Release in that it also consists of a trigger manifold connected to Bowden cables. SMF ¶ 42; CSMF ¶ 42. Unlike the Quad Release, however, the Evil Twin consists of two rather than four cables. Lesley Decl. ¶ 6, ECF No. [191] at 2. Moreover, there is a slight variation in the trigger – the Quad Release trigger has a lever mechanism, yet the Evil Twin trigger has a sliding mechanism. SMF ¶ 43; CSMF ¶ 43. The Evil Twin appears in the following illustration, taken from ECF No. [183] at 11:



### III.   LEGAL STANDARD

#### A.  Summary Judgment

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citations to materials in the record, including depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). "A factual dispute is 'material' if it would affect the outcome of the suit under the governing law, and 'genuine' if a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

A court views the facts in the light most favorable to the non-moving party, draws "all reasonable inferences in favor of the nonmovant and may not weigh evidence or make credibility determinations[.]'" *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1179 (11th Cir. 2019); *see also Crocker v. Beatty,* 886 F.3d 1132, 1134 (11th Cir. 2018) ("[W]e accept [the non-moving

party's] version of the facts as true and draw all reasonable inferences in the light most favorable to him as the non-movant." (citation omitted)). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990) (citation omitted).

### B. Patent Infringement

Patent infringement is analyzed in two steps. First, the Court must construe the meaning and scope of the patent claims asserted to be infringed. *See* Order on Claim Construction, ECF No. [163]. "The second step is comparing the properly construed claims to the device accused of infringing." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1996) (citation omitted). "To prove infringement, the patentee must show that the accused device meets each claim limitation, either literally or under the doctrine of equivalents." *Dynacore Holdings Corp. v U.S. Philips Corp.*, 363 F. 3d 1263, 1273 (Fed. Cir. 2004). "[A]bsent direct infringement of the claims of a patent, there can be neither contributory infringement nor inducement of infringement." *Id.* at 1277 (quotation marks omitted).

"Since the ultimate burden of proving infringement rests with the patentee, an accused infringer seeking summary judgment of non-infringement may meet its initial responsibility either by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case." *Novartis Corp. v. Ben Venue Labs.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001) (citation omitted). Once the

movant has satisfied its initial burden, the "burden of production then shift[s] to [the non-movant] to identify genuine issue that preclude summary judgment." *Optivus Tech., Inc. v. Ion Beam Applications S.A.*, 469 F.3d 978, 990 (Fed.Cir.2006); *see, e.g.*, *Zamora Radio, LLC v. Last.FM, Ltd.*, 758 F. Supp. 2d 1273 (S.D. Fla. 2010) (granting summary judgment of non-infringement where accused products and services did not infringe either literally or under doctrine of equivalents).

## IV.   DISCUSSION

All of Plaintiff's claims against Defendants involve claims of patent infringement, and all of Plaintiff's claims are dependent on Plaintiff's claims of direct infringement. *Id*. Defendants argue that summary judgment is warranted because the undisputed evidence demonstrates that Defendants' products do not contain a necessary limitation of Plaintiff's patents: a "pull cord." ECF No. [184]. Plaintiff responds that summary judgment is improper because there is a genuine issue of material fact as to whether the Accused Products contain a "pull cord" or its equivalent. ECF No. [190] at 9.

### A.   Literal Infringement

The parties agree on the legal standard applicable to literal infringement. *See* ECF No. [190] at 9 n.1 (Plaintiff citing the same cases as Defendants "to minimize any disputes as to the applicable law"). A finding of literal infringement requires the patent owner to establish that "every limitation set forth in a claim must be found in an accused product, exactly." *Southwall Techs., Inc. v. Cardinal IG Co*., 54 F.3d 1570, 1575 (Fed. Cir. 1995). "[I]f any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." *Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1253 (Fed. Cir. 2010) (quotation marks omitted).

All of Plaintiff's Patent claims relate to a quick release system that is activated by pulling

on a pull cord. Thus, for literal infringement to occur, the accused products must contain a pull cord – that is, "[a] cord that can be directly pulled by a user to disengage a releasable fastener or releasable hook." ECF No. [163] at 8.

As noted above, the Quad Release and Evil Twin quick release systems consist of Bowden cables that are attached to a trigger manifold. SMF ¶ 30; CSMF ¶ 30. Activating the trigger pulls the wire within the Bowden cables, which releases the buckles and disengages the vests. SMF ¶¶ 37, 42; CSMF ¶¶ 37, 42. The trigger manifold, plainly, is not a "cord," but rather a rigid structure that consists of a lever in the Quad Release, and a slide in the Evil Twin. SMF ¶¶ 29, 42-43; CSMF ¶¶ 29, 42-43. *See* Order on Claim Construction, ECF No. [163] at 5 (concluding that the pull cord is "a specific type of what is commonly understood to be a cord, *i.e.*, a long, slender, flexible material").

Plaintiff attempts to argue that either the Bowden cables or the wires within the Bowden cables constitute a "pull cord." ECF No. [190] at 7. However, as Defendants correctly point out, both of those components are entirely internal within the Point Blank Special Response Vest. ECF No. [184] at 11. They cannot be "directly pulled by a user" without ripping into the vest. ECF No. [163] at 8. Moreover, given the undisputed funcionality of the Bowden cables, discussed above, directly pulling on the outer sheaths of the Bowden cables will not disengage the connectors or release the vest. *Id*. at 12. Thus, neither the Bowden cables nor their internal wires satisfies the Court's definition of "pull cord" as "[a] cord that can be directly pulled by a user to disengage a releasable fastener or releasable hook." ECF No. [163] at 8.

Plaintiff attempts to create issues of fact through the Declaration of its expert, Jason Janet. ECF No. [192]. Janet asserts that the wires within the Bowden cables constitute pull cords, which are "directly connected to a trigger which acts as a handle to pull on the pull cord (the wire within

the sheath) directly and which can be directly pulled by the user." *Id.* ¶ 21. Accordingly, Plaintiff asserts that "[t]he wire of each of the accused products . . . are directly pulled by [a] wearer (or anyone else) pulling on the lever (of the buckle) which directly moves the wire to cause the vest to separate." CSMF ¶ 68.

Plaintiff's argument deprives the word "directly" of meaning. There is no way for the wearer to "directly" pull the wires, let alone touch them, because they are encased within Bowden cables, which are fully interior to the vest. Rather, the user *indirectly* pulls the wire by *directly* activating the trigger – either by pulling the handle on the Quad Release, or by moving the slide on the Evil Twin. For the reasons explained in the Court's Order on Claim Construction, ECF No. [163] at 4-8, it is the pull cord's function of being "directly" pulled by a user that distinguishes the pull cord from other "cords" described and depicted within the Patents. Thus, accepting Plaintiff's argument would require the Court to disregard the Patents' clear distinction between "cords," which are not directly pulled by a user, and the "pull cord," which is. *Id*. at 6. The wires within the Bowden cables are analogous to the generic "cords" within the Patents, which a user *indirectly* tightens by *directly* pulling on the pull cord.

Plaintiff attempts to analogize this case to a lightbulb that is activated by pulling on a pull cord. ECF No. [190] at 8. Plaintiff argues that adding an additional object such as a knob to the end of the pull cord, simply to make it easier to grip the pull cord, would not transform the pull cord into something other than a pull cord. *Id*. This analogy fails for at least two reasons. First, the cord within the accused products is a Bowden wire which consists of an internal movable wire enclosed within an immobile sheath. SMF ¶ 32; CSMF ¶ 32. Thus, pulling on the external sheaths of the Bowden cables would achieve nothing; the internal wire would not be put in tension, and the buckles would not be released. SMF ¶ 40; CSMF ¶ 40; 68 (disputing Plaintiff's use of the word

"directly," but not disputing how Bowden cables function). Second and relatedly, the Accused Products do not simply have objects attached to the end of the wire to make gripping easier. Rather, they have an entirely separate mechanism – the "trigger manifold" – that replaces the pull cord altogether.

Lastly, Plaintiff argues that the Patents "include the word 'comprising,'" which is an "open" term that means "including but not limited to." ECF No. [190] at 5-6 (quoting *Vivid Techs., Inc. v. Am. Sci. Eng'g, Inc*., 200 F.3d 795, 811 (Fed. Cir.1999)). Therefore, Plaintiff argues that the existence of additional components such as the "triggers" or Bowden cables within the Accused Products does not avoid infringement. Plaintiff is legally correct that the term "comprising . . . is generally understood to signify that the claims do not exclude the presence . . . of factors in addition to those explicitly recited." *Vivid Techs.*, 200 F.3d at 811 (citations omitted).

However, to literally infringe, an infringing product must have every element that *is* recited in the Patents. *See Southwall Techs.*, 54 F.3d at 1575; *Becton, Dickinson & Co.*, 616 F.3d at 1253 ("If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law."). For the reasons discussed above, the Accused Products do not have a "pull cord." Accordingly, there is no literal infringement.

### B. Doctrine of Equivalents

Even when there is no literal infringement, infringement may occur under the doctrine of equivalents ("DOE"). "The doctrine of equivalents prevents an accused infringer from avoiding infringement by changing only minor or insubstantial details of a claimed invention while retaining their essential functionality." *Sage Prods., Inc. v. Devon Inds., Inc.*, 126 F.3d 1420, 1424 (Fed. Cir. 1997) (citations omitted). "At the same time, the doctrine of equivalents necessarily adds uncertainty to the scope of patent claims, and thereby detracts from the public-notice function of

patent claims and risks deterring non-infringing and potentially innovative endeavors." *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005) (citation omitted). "In recognition of this risk, and in an effort to strike the proper balance between protecting patentees while also providing sufficient notice to the public, various rules of law have emerged to constrain when and how the doctrine of equivalents is to be applied." *Id.*

For the DOE to apply, there must be "'equivalence' between the elements of the accused product or process and the claimed elements of the patent invention." *Warner-Jenkinson Co. v. Hilton Davis Chem.* Co., 520 U.S. 17, 21 (1997). "Under the doctrine of equivalents, we examine each element of the claim to determine whether the allegedly infringing device meets that requirement or has some alternative feature that is equivalent to the unmet requirement." *MDS (Canada) Inc. v. Rad Source Techs., Inc.*, 720 F.3d 833, 848 (11th Cir. 2013) (citing *Warner– Jenkinson*, 520 U.S. at 29). "One way to evaluate substantial equivalence is to consider whether the element performs substantially the same function in substantially the same way to produce substantially the same result." *Id*. (citation omitted). "Even if this test is met, however, there can be no infringement if the asserted scope of equivalency of what is literally claimed would encompass the prior art." *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 677, 683 (Fed. Cir. 1990) (citations omitted).

Plaintiff argues that, to the extent the Accused Products lack a "pull cord," the Accused Products' "trigger system" is equivalent to the "pull cord" mechanism. ECF No. [192] ¶ 26. Plaintiff does not differentiate between the Quad Release and Evil Twin trigger systems but argues that both trigger systems "provide the same function, in the same way and with the same result as the pull cord, doing substantially the same role." *Id*. Defendants argue that the Quad Release trigger system does not function in substantially the same way as the pull cord, Plaintiff's position would

impermissibly "ensnare prior art," and Plaintiff's theory eliminates a necessary element of the Patents, namely, a "cord" that is pulled. ECF No. [184] at 13- 18.

### i.      Equivalency

Plaintiff argues that the Quad Release system does not operate in the same way as Plaintiff's pull cord. "That a claimed invention and an accused device may perform substantially the same function and may achieve the same result will not make the latter an infringement under the doctrine of equivalents where it performs the function and achieves the result in a substantially different way." *Perkin-Elmer Corp. v. Westinghouse Elec. Corp.*, 822 F.2d 1528, 1532 n.6 (Fed. Cir. 1987).

According to Defendants' uncontroverted evidence, the Quad Release system does not involve an individual directly pulling on any wire or cable. ECF No. [184] at 17. Rather, the system is operated by the user applying an *indirect* force to the internal wire by applying a *direct* force to the trigger. *Id.* (citing Rittenhouse Decl. ¶¶ 16, 25, ECF No. [183]). Due to the design of the Quad Release trigger, the result is a "mechanical advantage" that reduces the amount of force that must be applied to activate the quick release system. *Id.* at 17.[7] Thus, Defendants contend that, although the Quad Release trigger system performs the same function as the pull cord, it does so "in a different away and provides an improved result." *Id*. at 17. Defendants point to *Stumbo v. Eastman Outdoors, Inc.*, 508 F.3d 1358, 1365 (Fed. Cir. 2007), wherein the Federal Circuit indicated that an accused product's design is not equivalent when the accused product's design is "advantageous"

---

[7] Plaintiff does not dispute that the Quad Release's trigger system requires less force, but Plaintiff's expert argues that this point is irrelevant. *See* ECF No. [192] ¶ 30 ("The fact that the trigger may alter the level of force on the wire that it pulls or can change timing of the release of the buckles are additional features that are not limitations within the claim language and may or may not be advantageous to the user."). The Court disagrees with Plaintiff's expert because how the trigger system functions is critical to the analysis of whether it functions "in a substantially different way." *Perkin-Elmer Corp.*, 822 F.2d at 1532

to the patents' system. The doctrine of equivalents is therefore not to be applied because they are not equivalents even if they do perform the same function." *Atlanta Motoring Accessories, Inc. v. Saratoga Techs., Inc.*, 33 F.3d 1362, 1367 (Fed. Cir. 1994).

Plaintiff does not meaningfully respond to Defendants' argument regarding equivalency. Indeed, Plaintiff's discussion of the Doctrine of Equivalents consists of two pages, ECF No. [190] at 10-11, and is devoid of citations to legal authority. Rather, Plaintiff's Response refers to Plaintiff's Counter Statement of Material Facts, which in turn cite to two paragraphs within Plaintiff's expert Report. *See* Janet Decl. ¶¶ 33-34, ECF No. [192]. Therein, Janet asserts that the trigger system "achieves the same function, in the same way," as the pull cord. *Id.* ¶ 34. "To conclude otherwise would be the same as saying that a pull cord on an overhead light or overhead fan is not pulled 'directly' if the cord has a knob on the end to make it easier to grip and pull the cord." *Id.* ¶ 34.

Janet's first statement is a conclusory legal assertion that does not, on its own, create a genuine issue of material fact. *Stumbo*, 508 F.3d at 1365 (holding that an expert's statement "in conclusory fashion" that two methods were not "significantly different" is the type of "cursory conclusion[ ]" that "will not withstand summary judgment."). Janet's analogy of the overhead light is inapposite for the reasons discussed in the literal infringement section, above. The trigger system of the Quad Release system is not a mere "knob" that makes the pull cord easier to grasp. Rather, it is an additional component that involves a user applying an *indirect* force, the effect of which is to reduce the mechanical force necessary to disengage the connectors and detach the vest. Thus, the Quad Release trigger system is not functionally equivalent to the pull cord.

Accordingly, the Court finds that Plaintiff has not introduced evidence that would create a factual dispute as to whether the Quad Release system is equivalent to the pull cord. However,

Defendants' equivalency argument is directed solely toward the Quad Release system. ECF No. [184] at 16-18. As for the Evil Twin, there is insufficient evidence indicating how that system operates and whether it provides any advantage over the pull cord system. Thus, the Court proceeds with Defendants' argument regarding prior art.

### ii.      Prior Art

Even assuming that the Evil Twin trigger system is functionally equivalent to the pull cord, "there can be no infringement if the asserted scope of equivalency of what is literally claimed would encompass the prior art." *Wilson Sporting Goods Co.*, 904 F.2d at 683; *see also Zamora Radio, LLC*, 758 F. Supp. 2d at 1287. This limitation exists because "a patentee should not be able to obtain, under the doctrine of equivalents, coverage which he could not lawfully have obtained from the PTO by literal claims." *Wilson Sporting Goods Co.*, 904 F.2d at 684.

Here, the Background section of the patents describes prior art of "cutaway vests" that consisted of cables attaching the front and rear portions of the vest. '567 Patent at col. 1 lines 57-62, ECF No. [181-1]. Those cables were attached to "a handle" which, when pulled, releases the vest components. *Id*. at lines 63-65. The Patents disparage such cutaway vests with "handle" release systems because they entailed a tedious and time-consuming reassembly process. *Id*. at col. 1 line 66 – col. 2 line 3. As such, the Patents disavowed prior art that included quick release systems operated by "a handle" that could be pulled. According to Plaintiff's own expert, the Quad Release and Evil Twin systems act in precisely the same way – "as a handle." ECF No. [192] ¶ 22.

Thus, if the Court considered the Quad Release trigger system to be equivalent to the pull cord under the DOE, then the Court would be allowing the Patents to cover the very design that they explicitly rejected in the prior art. The DOE does not permit such a result. "Having specifically identified, criticized, and disclaimed" other quick release systems, "the patentee cannot now

invoke the doctrine of equivalents to 'embrace a structure that was specifically excluded from the claims.'" *SciMed Life Systems, Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1345 (Fed. Cir. 2001); *see Gemalto S.A. v. HTC Corp.*, 754 F.3d 1364, 1374 (Fed. Cir. 2014) (rejecting a DOE argument which, if accepted, would add to a patent's claims "systems that were widely used prior to its invention.").

Plaintiff's Response does not address Defendants' argument regarding prior art. *See generally* ECF No. [190]. Nor is there a mention of the prior art in Plaintiff's Counter Statement of Material Facts or expert Declaration. *See generally* ECF Nos. [192], [193].  Plaintiff's failure to respond to Defendants' prior art argument amounts to a concession that Defendants' argument is meritorious. *GolTV, Inc. v. Fox Sports Latin Am. Ltd.*, 277 F. Supp. 3d 1301, 1311 n.7 (S.D. Fla. 2017) ("When a party fails to respond to an argument or address a claim in a responsive brief, such argument or claim can be deemed abandoned.").

Nonetheless, the Court has analyzed the summary judgment evidence to determine whether there exists a genuine issue of material fact as to whether the Patents' prior art disavowed the type of quick release systems at issue here. The Court has found only one relevant statement from the Declaration of Mark Lesley, the purported inventor of the quick release system covered by Patents '567 and '020:

> The problem that the patents sought to solve was to give a user/puller a single stage, direct action system to doff the vest (protective garment) with speed and ease. Prior art did not achieve such a result, which prompted me with Dovner to create and have the invention patented which solves the problem.

Lesley Decl. ¶ 5, ECF No. [191]. This statement does not create any genuine dispute of fact. If anything, it supports Defendants' argument that the Patents were intended to exclusively cover a pull cord release system that involves a "direct action," as opposed to an indirect system such as the Quad Release or Evil Twin.

In light of the undisputed fact that other quick release mechanisms existed at the time the Applications were filed, "[a] skilled patent drafter would foresee the limiting potential of the" pull cord limitation. *Sage Products*, 126 F.3d at 1425. "No subtlety of language or complexity of the technology, nor any subsequent change in the state of the art, such as later-developed technology, obfuscated the significance of this limitation at the time of its incorporation into the claim." *Id.* (citation omitted). If the inventor "desired broad patent protection for any [quick release system] that performed a function similar to its claimed [pull cord], it could have sought claims with fewer structural encumbrances." *Id.* at 1425. "Instead, [Plaintiff] left the [Patent and Trademark Office] with manifestly limited claims that it now seeks to expand through the doctrine of equivalents." *Id.* "However, as between the patentee who had a clear opportunity to negotiate broader claims but did not do so, and the public at large, it is the patentee who must bear the cost of its failure to seek protection for this foreseeable alteration of its claimed structure." *Id*. (citation omitted) (affirming summary judgment of non-infringement); *see also Gemalto*, 754 F.3d at 1374 (affirming summary judgment of non-infringement because "[t]he doctrine of equivalents cannot be applied to encompass the prior art[.]").

Therefore, the Court concludes that the DOE does not permit Plaintiff to expand the Patents' "pull cord" limitation to include the Quad Release or Evil Twin systems within Defendants' products.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  Defendants' Motion for Summary Judgment, **ECF No. [184]**, is **GRANTED**.

2.  A final judgment shall issue by separate order.

Case No. 21-cv-61976-BLOOM/Reinhart

**DONE AND ORDERED** in Chambers at Miami, Florida, on April 19, 2023.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record