UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-61976-BLOOM/Reinhart

IQRIS TECHNOLOGIES LLC,

    Plaintiff,

v.

POINT BLANK ENTERPRISES, INC, *et al.*,

    Defendants.
_____/

### ORDER ON MOTION TO ENFORCE SETTLEMENT AGREEMENT

**THIS CAUSE** is before the Court upon Plaintiff Iqris Technologies LLC's ("Iqris") Motion to Enforce Settlement, ECF No. [205] ("Motion"), filed on April 20, 2023. Defendants Point Blank Enterprises, Inc. ("Point Blank") and National Molding, LLC ("National Molding") filed a Response, ECF No. [213], to which Iqris filed a Reply. ECF No. [214]. Iqris additionally filed a sealed document containing unredacted emails related to settlement discussions. ECF No. [211] (Sealed). The Court has carefully considered the Motion, the Response, the Reply, Iqris's sealed submission, the record in this case, the applicable law, and is otherwise fully advised. For the reasons explained below, Iqris's Motion is denied.

    **I.**    **BACKGROUND**

This is a patent dispute between Plaintiff Iqris and Defendants Point Blank and National Molding. *See* First Amended Complaint, ECF No. [101]. On April 19, 2023, following summary judgment briefing, the Court granted summary judgment in favor of Defendants, concluding that their product does not infringe on Iqris's patents. *See* Summary Judgment Order, ECF No. [204].

The following day, Iqris filed its Motion to Enforce Settlement. ECF No. [205]. Therein,

Iqris claims that Iqris's representatives, Gary Lesley and Susan Michaletz, reached a settlement agreement with Defendants' representatives, Paul Frascoia and Scott Mueller, on April 18, 2023 – the day before the Court granted summary judgment to Defendants. *Id.* at 1. As evidence of this settlement agreement, they present emails between Frascoia and Lesley. *Id.* The first email, in full, states as follows:

> Hi Susan and Gary,
>
> Pursuant to our discussion – here are the proposed terms of settlement:
>
> 1. [REDACTED]
> 2. [REDACTED]
> 3. [REDACTED]
> 4. [REDACTED]
> 5. [REDACTED]
>
> If these general terms are acceptable to you, please confirm by return e-mail and I will send the message to our counsel and have them contact your counsel to quickly paper this up and have both parties sign. Agreement is tentative until settlement agreement is signed, but we expect to be able to have a settlement agreement drafted and signed within 24 to 48 hours of your positive response.
>
> Thank you for your time and for having these amicable discussions with us.
> Regards
> Paul
>
> ***Paul Frascoia***
> ***President & CEO***
> ***National Molding/Dynaplas***

*Id.* at 2. Ten minutes later, Lesley sent the following email in response:

> Sue,
>
> This email will serve to confirm my agreement to the proposed and to be equally responsive from our side in the enactment of a binding legal settlement in this matter.
>
> Thanks to all in this effort to resolve this in a fair and reasonable manner.
>
> Gary

*Id.*

Later that same day, the parties' lawyers scheduled a 3:00 p.m. call for the following day, April 19, 2023, to discuss the settlement. *Id*. at 3. On that day, at 1:22 p.m., the Court issued its Summary Judgment Order, granting summary judgment to Defendants. ECF No. [204]. During the lawyers' call at 3:00 p.m., Defendants' counsel informed Iqris's counsel that, in light of the Summary Judgment Order, there would be no settlement. ECF No. [205] at 3.

In its Motion, Iqris seeks to enforce what it purports to be a binding, final settlement agreement that the parties reached on April 18, 2022. ECF No. [205] at 4. According to Iqris, "[a]bsent the Court's favorable ruling on Defendants' Motion for Summary Judgment within hours after the parties reached a settlement, counsel would have filed a Joint Notice of Settlement with the Court (subsequent to their phone conference), and Defendants' counsel would have prepared a written settlement agreement memorializing the five essential terms of the parties' agreement." *Id*. at 6.

In Response, Defendants argue that the plain language of the emails between the parties indicates that the parties had not reached a binding settlement agreement. ECF No. [213] at 1. They filed declarations by Paul Frascoia, the President and CEO of National Molding, and Scott Mueller, the CFO. ECF Nos. [213-1], [213-2]. Both Frascoia and Mueller were present during the videoconference that preceded the emails. Both Frascoia and Mueller aver that, "[t]oward the end of the call, Mr. Lesley asked Mr. Frascoia if the parties would have a final and binding settlement, should IQRIS accept the proposal." ECF No. [213-3] ¶ 3; *see also* ECF No. [213-2] ¶ 3. "In response, Mr. Frascoia explained that there would be no final, binding settlement until the lawyers memorialized a settlement in a settlement agreement and the parties signed it. Mr. Lesley indicated that he understood Mr. Frascoia's position." ECF No. [213-3] ¶ 3; *see also* ECF No. [213-2] ¶ 3.

3

In Reply, Plaintiff filed declarations of Gary Lesley and Susan Michaletz, Iqris's representatives who were also present at the videoconference. ECF No. [214-1]. Lesley states that he reviewed Frascoia and Mueller's declarations. *Id*. at 2 ¶ 5. As relevant here, Lesley additionally states: "Neither during the April 18 video conference, nor in my email exchange with Mr. Frascoia and Mr. Mueller, did I acknowledge or accept that a written executed settlement agreement was a contingency for a binding settlement agreement between the parties." *Id*. at 3 ¶ 6. Similarly, Michaletz declares that she reviewed the Frascoia and Mueller declarations, and she did not "view Mr. Lesley's actions or statements" during the videoconference "as acknowledgement or acceptance of the notion that a written executed settlement agreement was a contingency for a binding settlement agreement[.]" *Id.* at 6-7 ¶¶ 5-7.

## II.    LEGAL STANDARD

"[I]n determining whether a binding agreement arose between the parties, courts apply the contract law of the particular state that governs the formation of contracts." *Caley v. Gulfstream Aerospace Corp*., 428 F.3d 1359, 1368 (11th Cir. 2005). Under Florida law, "the party seeking to enforce a settlement agreement bears the burden of proving, by a preponderance of the evidence, that the opposing party assented to the terms of the agreement." *D.B.C. Corp. v. Nucita Venezolana, C.A*., No. 18-cv-25225, 2020 WL 8872096, at *1 (S.D. Fla. June 15, 2020) (citing *Carroll v. Carroll*, 532 So. 2d 1109, 1109 (Fla. 4th DCA 1988)). A "tentative and incomplete agreement[ ] will not establish a sufficient meeting of the minds to create an enforceable settlement agreement." *Williams v. P.F. Chang's China Bistro, Inc*., No. 16-cv-60906-BLOOM, 2016 WL 4366481, at *3 (S.D. Fla. Aug. 16, 2016). "Nor may an agreement be determined to be final where the record establishes that it is the intent of the parties that further action be taken prior to the completion of a binding agreement." *Williams v. Ingram*, 605 So. 2d 890, 893 (Fla. 1st DCA 1992).

III.     DISCUSSION

Iqris argues that the emails between the parties establish the existence of a binding settlement agreement on April 18, 2023. ECF No. [205]. Defendants accurately respond that the plain language of those emails belies Iqris's argument. ECF No. [213] at 9.

The offer email from Frascoia listed five proposed terms of settlement, and then stated:

> If these general terms are acceptable to you, please confirm by return e-mail and I will send the message to our counsel and have them contact your counsel to quickly paper this up and have both parties sign. Agreement is tentative until settlement agreement is signed, but we expect to be able to have a settlement agreement drafted and signed within 24 to 48 hours of your positive response.

ECF No. [205] at 2. It is difficult to imagine a clearer statement that Iqris could not create a binding settlement agreement simply by accepting Frascoia's offer via email. *Id*. Frascoia's email unambiguously states that "[a]greement is tentative until settlement agreement is signed[.]" *Id*.

In Lesley's acceptance email, he expressed acknowledgment that the agreement was not final until execution of a written settlement agreement. That is the only reasonable interpretation of Lesley's promise "to be equally responsive from our side in the enactment of a binding legal settlement in this matter." ECF No. [205] at 2. Lesley's promise to be responsive in "in the enactment of a binding legal settlement" cannot be squared with Iqris's position that a binding settlement agreement had already been established.

Iqris attempts to create a disputed issue of fact in its declarations from Lesley and Michaletz. Lesley avers that it was his "understanding that my acceptance of the settlement terms via email constituted a final and binding agreement[.]" ECF No. [214-1] at 3 ¶ 11. However, Lesley's purported understanding or intention is irrelevant because "Florida applies an 'objective test' to determine whether the parties formed an enforceable contract." *Perez-Perez v. Vasquez*, No. 16-cv-14002, 2019 WL 5291097, at *2 (S.D. Fla. June 13, 2019), *report and recommendation*

*adopted*, 2019 WL 5290909 (S.D. Fla. July 12, 2019). That objective test turns on "whether the parties externally indicated an intent to be bound." *Id.* (citing *Robbie v. City of Miami*, 469 So.2d 1384, 1385 (Fla. 1985)). Thus, it is the parties' statements themselves, and not their unstated understandings or intentions, that determine whether a settlement was reached. *See Robbie*, 469 So. 2d at 1385. As discussed above, the words within the exchanged emails leave no doubt, under the objective test, that "[a]greement [wa]s tentative until settlement agreement is signed[.]" ECF No. [205] at 2.

Iqris argues that the parties agreed to all the essential terms of a settlement, and execution of a settlement agreement was "not a condition precedent to a settlement agreement, but merely a procedural formality." ECF No. [205] at 4 (citing *Boyko v. Ilardi*, 613 So. 2d 103, 104 (Fla. 3d DCA 1996)). *Boyko*, a single-paragraph *per curiam* order, does not support the proposition that execution of a settlement agreement can *never* be a condition precedent to a settlement agreement. Rather, the case law is clear that execution of a written and signed agreement *can* be a condition precedent to a binding settlement agreement – if the parties express that intention. "Where the parties intend that there will be no binding contract until the negotiations are reduced to a formal writing, there is no contract until that time." *Club Eden Roc, Inc. v. Tripmasters, Inc.*, 471 So.2d 1322, 1324 (Fla. 3d DCA 1985).

As Defendants correctly argue, *D.B.C. Corp. v. Nucita Venezolana, C.A.*, No. 18-cv-25225, 2020 WL 8872096 (S.D. Fla. June 15, 2020), is squarely on point. In that case, one party wrote in an email "'I spoke with my client and I think we have a deal'— suggesting acceptance – but then immediately wrote in the following sentence, '[p]lease send me the final draft so I can review it one last time before my client signs' – suggesting that that acceptance was contingent upon final review by his clients[.]" *Id.* at *2. The other party affirmed that the parties "had reached an

6

agreement in principle," but then expressed a contingency: "provided the final agreement reflects our final understanding we should have a deal in place." *Id*.

The *D.B.C.* court recognized that "often times it may be a mere formality for the parties to execute a final settlement agreement," but concluded that, based on the parties' statements, "execution of the final agreement became a condition precedent to the formation of a binding agreement." *Id*. at 3 (citing *Miles v. Nw. Mutual Life Ins. Co.*, 677 F. Supp. 2d 1312, 1316 (M.D. Fla. 2009) ("Where the parties intend that there will be no binding contract until the negotiations are reduced to a formal writing, there is no contract until that time." (quotation marks omitted))).

*Long Term Management, Inc. v. University Nursing Care Center, Inc.*, 704 So. 2d 669, 674 (Fla. 1st DCA 1997) is also on point. In that case, attorneys began a hearing by informing the judge "that the parties had reached a settlement." *Id*. However, the attorneys then made comments indicating that the agreement "would not be binding until reduced to writing and properly executed." *Id*. The *Long Term* court concluded: "These circumstances are not consistent with a determination that the parties had a clear understanding that the agreement was final and enforceable on the abbreviated terms recited to the trial court." *Id.* at 674. Rather, the parties recognized "that a written agreement was a prerequisite" to create a binding settlement agreement. *Id*.

As in *D.B.C.* and *Long Term*, the emails in this case reflect both parties' clear understanding that their agreement was "tentative until settlement agreement is signed[.]" ECF No. [205] at 2. Iqris has provided no case to support their argument that the Court should ignore the parties' clear statements that their agreement was "tentative" and contingent on execution of a written agreement.

The conclusion that no binding agreement was reached is only strengthened by the parties'

7

descriptions of the videoconference that preceded the emails. Defendants' representatives, Frascoia and Mueller, state that toward the end of the videoconference, "Frascoia explained that there would be no final, binding settlement until the lawyers memorialized a settlement in a settlement agreement and the parties signed it. Mr. Lesley indicated that he understood Mr. Frascoia's position." ECF No. [213-3] ¶ 3; *see also* ECF No. [213-2] ¶ 3. In the declarations filed by Iqris in Reply, Iqris's representatives assert that Lesley never "acknowledge[d] or accept[ed] that a written executed settlement agreement was a contingency for a binding settlement agreement between the parties." ECF No. [214-1] at 3 ¶ 6; *id*. at 7 ¶ 6. Thus, there is a factual dispute as to whether Lesley expressed agreement with Frascoia's statement.

However, the declarations of Iqris's representatives are revealing in what they *do not* dispute: that Frascoia clearly stated that no binding settlement could be reached until a written settlement agreement was signed and executed. The fact that Lesley did not "acknowledge or accept" Frascoia's position is immaterial. ECF No. [214-1] ¶ 6. What matters is that Frascoia, the offeror, clearly expressed his intention that a written and signed settlement agreement was a condition precedent to a binding agreement. Lesley's unstated disagreement with Frascoia's position is immaterial to the Court's analysis under the objective test that turns on the parties' external communications. *See Robbie*, 469 So. 2d at 1385. The parties' description of the videoconference confirms that a written and signed settlement agreement was a necessary condition to creation of a binding agreement.

Although the parties in this case reached agreement on the general terms of a settlement, they clearly expressed an intention that their "[a]greement [wa]s tentative until settlement agreement is signed[.]" ECF No. [205] at 2. No such agreement was ever signed. Thus, there is no settlement agreement to enforce.

Case No. 21-cv-61976-BLOOM/Reinhart

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Iqris's Motion, **ECF No. [205]**, is **DENIED**.

2. As stated in the Court's Paperless Order of May 11, 2023, ECF No. [216], for purposes of Iqris's deadline to file a notice of appeal, the Court has construed Iqris's Motion to be a Motion to Alter or Amend Judgment under Rule 59(e).

**DONE AND ORDERED** in Chambers at Miami, Florida, on May 26, 2023.

_____
**BETH BLOOM
UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record